# Mary Phillips's Appeal.

The lapse of twenty years gives rise to a presumption of payment of the distributive shares of an intestate's estate.

This presumption is strengthened by a greater lapse of time.

NOTE.—No accounting will be ordered after the lapse of twenty years, unless the presumption of payment is overcome by satisfactory evidence. Okeson's Appeal, 2 Grant Cas. 303; Davis's Estate, 6 W. N. C. 15; Anderson's Appeal, 102 Pa. 258; Henry's Estate, 8 Pa. Dist. R. 649, 23 Pa. Co. Ct. 290, 5 Lack. Legal News, 320, 6 Lack. Legal News, 74. But the presumption may be so overcome. Ellison's Estate, 163 Pa. 315, 30 Atl. 199; Landis's Estate, 13 Phila. 305; Nixon's Estate, 14 Phila. 297.

After thirty years it ought not to be overcome by anything but clear proof.

In this case, *held*, that the evidence was not sufficient to rebut the presumption arising from the lapse of thirty-three years.

(Argued February 22, 1888. Decided April 30, 1888.)

January Term, 1888, No. 6, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Appeal from a decree of the Orphans' Court of Pike County dismissing a petition for a citation. Affirmed.

The facts were stated in the opinion of the court below by SEELY, P. J., which was as follows:

In the year 1846 the last will and testament of James Wallace was proved before the register of wills for Pike county, and letters testamentary were granted his three sons, John H. Wallace, F. B. Wallace, and James S. Wallace. Besides these three sons the testator left three daughters, all beneficiaries under the will.

It is quite clear from the whole case, as presented us, that John H. Wallace was the acting executor, and had the general charge and management of the estate, F. B. Wallace residing in New York, and James S. Wallace having but little knowledge of matters. John H. Wallace, the acting executor, died January 1, 1872. Mrs. Mary A. Phillips, one of the daughters of the testator, and mother of the present petitioner, died September 9, 1879.

On the 19th of October, 1885, thirty-nine years after the probate of the will, nearly fourteen years after the death of the principal and acting executor, six years after the death of her mother, under whose right she claims, all the executors being dead, Mary Phillips seeks to compel the administrators of John H. Wallace and James S. Wallace to file an account and settle the estate of James Wallace.

The lapse of twenty years gives rise to a presumption of payment of the distributive shares of an intestate. Com. use of Miller v. Snyder, 62 Pa. 157.

This presumption is strengthened by the greater lapse of time. See Seibert's Appeal, 2 W. N. C. 53; Foulk v. Brown, 2 Watts, 214, 215; Peters's Appeal, 106 Pa. 343, and Hess v. Frankenfield, 106 Pa. 443.

Another material fact in this case is the death of all the execu-

tors of James Wallace. A similar condition is noted in Seibert's Appeal, 2 W. N. C. 53.

In Nixon's Estate, 38 Phila. Leg. Int. 224, Judge HANNA, ruling that, where the executrix admitted she had never filed an account, she might be required to account after the lapse of twenty-five years, said: "If the executrix were now deceased and a citation had been issued to her executor or administrator to file the account which she should have filed in her lifetime, we would find no difficulty in holding that from the lapse of time it might and should be presumed the executrix had faithfully performed her duty and settled the estate according to law, even if it was conclusively shown that no account had been filed."

In Peters's Appeal, 106 Pa. 343, it was said the presumption of payment "gathers strength as time advances; and it is not too much to say that after thirty years, it ought not to be overcome by anything but clear proof."

Is this presumption rebutted? It appears that on the books of James Wallace is found an entry in the handwriting of John H. Wallace, as follows: "Settled the estate account in November, 1852."

In 1852 John H. Wallace sent to Mrs. Phillips, the mother of the petitioner, a statement of account, which was entitled "Mary A. Phillips, in account with executors of estate," in which she is credited:

By 1/5 share of estate after deducting legacy to
  Helen, debts and expenses .................. $1,688 86
Interest on $1,000 received from Helen for H.
  from July 16, 1847 ...................... 320 00
                                          _____
                                          $2,008 86

and is charged with items showing a balance in her favor of $8.96.

Mrs. Phillips protested against the correctness of this settlement, and John H. Wallace wrote her, December 10, 1852, as alleged in the answer, and not denied in the replication: "After making out the account and finding so little due you, I proposed to James and Francis that on the amounts that you received from me from time to time we would not charge any interest, to which proposition they both con-

sented; and adopting that method, you will have coming to you $127.79, instead of $8.95. At any time when you call I will pay you that amount and take your receipt in full." Then follows a statement with reference to certain doubtful claims.

From this time on the evidence shows no acknowledgment by any executor of any liability on the part of the estate of James Wallace to Mrs. Phillips. In 1859 the executors presented to her and asked her to sign a paper releasing the estate from all further claims. A letter in evidence from John H. Wallace, February 16, 1853, to Mrs. Phillips says: "If possible, I will bring with me when I next come to New York, everything necessary to show the amount due you, and we will look over the whole matter and have it closed up, as I am anxious to have the business off my hands; and besides it is time the estate was settled."

Letters from James S. Wallace, July 6, 1856, and June 5, 1857, only indicate that he was ignorant as to the state of the account, and that he thought his sister had a right to a more full statement of the account from John H. Wallace. Neither in these letters nor in that of June 30, 1879, does he admit that his sister has not received her full share of the estate.

November 24, 1872, James S. Wallace, replying to a letter from Hathaway & Montgomery, attorneys for Mrs. Phillips, says: "If my sister Amanda (Mrs. Phillips) has not had her equal share, it should be returned to her. I was always under the impression that she received the same as I did, besides receiving 400 acres of land in Pennsylvania; and I regret it has been left so long, and he is not here to explain it, and settle up the matter as it should be." That "he is not here to explain it," evidently refers to the death of John H. Wallace.

Then we have conversations with regard to looking over books and making out of statements, but nowhere an admission by the executors of any liability to Mrs. Phillips. If there be any exception to this statement, it is in the alleged offer of a compromise by F. B. Wallace. It is said that in 1872 F. B. Wallace offered Mrs. Phillips $2,000 to close up this matter. Waiving the question as to the competency of the evidence offered to prove this fact, the representatives of F. B. Wallace are not in court or party to this proceeding. The offer of $2,000, if made, was but a proposition for compromise, not accepted. When communicated to Mrs. Phillips she expressed neither assent nor dissent. John H. Wallace was already dead, and the

evidence cannot be taken as charging either James S. Wallace or the estate of John H. Wallace with an admission that anything was due Mrs. Phillips, or as repelling the presumption that she had been paid. Its tendency to rebut the presumption of payment is not nearly so strong as that of the declarations shown in Peters's Appeal, 106 Pa. 343.

For thirty-three years during the lifetime of Mrs. Phillips, the courts of Pike county were open to hear any complaint she might present. She knew the acting executor asserted by the statement rendered, and by his correspondence, that she had received her share of her father's estate, excepting a small sum which he offered to pay at any time; yet she never sought the aid of the court in asserting her alleged right. She expressed dissatisfaction, and complained from time to time, it is true; but her expressions of complaint elicited no acknowledgment, by the acting executor, of error or of liability. If the executors were now living, we might perhaps not permit them to excuse any failure in their duty by her laches. But after all the executors are dead, and fourteen years after the death of the acting executor, who was familiar with the transaction, in a proceeding to compel the representatives of these executors to settle this estate, the laches of the petitioner and her mother is of material consequence.

We are not clear that the petitioner will suffer any substantial wrong. We are clear that to require these representatives of the deceased executors of the will of James Wallace, after the lapse of this long period, and especially so long after the death of the acting executor, to account for the assets of that estate, may work great injustice.

In the replication filed to the answer of respondents, "The said Mary Phillips says that from the loose maner in which John H. Wallace kept his books and papers, it may not be an easy matter to show just what he and the other executors did with the property of James Wallace; but she submits that such an excuse will not do away with the requirements of the law to keep and file an account of the management of the estate." As an abstract proposition this is unobjectionable, but as coming from one who has slept upon her rights for nearly forty years, it presents such a probability of injustice as will compel a court to hesitate.

We do not think the presumption of payment of Mrs. Phillips's share in this estate is fairly repelled. If the petitioner

suffers in this matter, her loss must be attributed to the neglect of her mother and herself to move, at a time when it was possible to fairly investigate the matters of this estate.

Now, July 20, 1887, the rule to show cause why respondents should not be cited to account is discharged, and the proceedings are dismissed.

The assignments of error specified the action of the court below in entering this decree.

*Geo. G. Waller* for appellant.

*C. W. Bull,* for appellees.—The burden of proof after twenty years is on the petitioner to show that payment has not been made. Bentley's Appeal, 99 Pa. 500; Lash v. Von Neida, 109 Pa. 207.

The lapse of twenty years gives rise to a presumption of payment of the distributive shares of an intestate. Com. use of Miller v. Snyder, 62 Pa. 153; Norris's Appeal, 71 Pa. 106.

After the lapse of so many years (as in this case over thirty years from rendering of account and distribution, to the institution of these proceedings) the presumption is that the estate of James Wallace was fully settled and should not be overcome by anything but clear proof, for this presumption gathers strength as time advances. Peters's Appeal, 106 Pa. 340, and Hess v. Frankenfield, 106 Pa. 440; Biddle v. Girard Nat. Bank, 109 Pa. 349; Seibert's Appeal, 2 W. N. C. 53; Foulk v. Brown, 2 Watts, 214.

The executors all being dead, the proof to overcome the presumption of payment should be stronger, for the representatives are not so likely to know of the actual evidence of payment as they would be.

PER CURIAM:

It is wholly unnecessary for us to enter upon the discussion of a case so utterly wanting of equity as the one in hand. The court below has said all that was required to show the fallacy of the appellant's complaint; and we have, therefore, nothing to do but concur in the decree.

The appeal is dismissed and the decree affirmed, at costs of appellant.